UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gregg G. Hipple, et al,

Plaintiffs,

v.

OrthAlliance, Inc.,

Defendant.

Civil No. 01-1131 (RHK/SRN)

ORDER

---

Linda L. Holstein, Esq. and Anh R. Le, Esq., on behalf of Plaintiffs.

Lora Esch Mitchell, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendant's Motion for Agreed-Upon Protective Order (Doc. No. 35) and Plaintiffs' Motion for a Limited Protective Order (Doc. No. 38). The parties waived oral argument on these motions, and agreed to have them decided on the papers.

## I. MOTIONS FOR PROTECTIVE ORDERS.

### A. Factual Background.

In the present case, Plaintiffs have brought claims against Defendant, with which they had a services agreement, for Defendant's alleged failure to supply services. Early in this litigation, the parties agreed that a protective order would be necessary for information produced during discovery. The parties then exchanged drafts of proposed protective orders. On November 29,

APR 0 9 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

2001, Plaintiffs wrote to Defendant informing it that its proposed protective order was unacceptable, because "[i]t would arguably prevent our sharing information received in this case with other members of OrthAlliance currently involved in litigation, or who may be contemplating litigation." (Affidavit of Lora Esch Mitchell (Mitchell Aff.), Ex. D.)

On December 5, 2001, Plaintiffs wrote to Defendant requesting additional changes to a modified protective order, which concerned confidentiality designations. (Mitchell Aff., Ex. F.) On December 6, 2001, Defendant provided a further modified protective order addressing that issue. (Mitchell Aff., Ex. G.) This draft of the protective order did not allow for the sharing of information with other member plaintiffs or potential plaintiffs. Id. On December 7, 2001, Plaintiffs wrote to Defendant, stating, "[w]e will immediately inspect all documents in your [sic] possession. We will treat them as confidential until the protective order is finalized, if you will treat all documents you have received from us as confidential until the protective order has been finalized. The protective order you have submitted is acceptable." (Mitchell Aff., Ex. H.)

On December 11, 2001, Defendant signed the proposed protective order and submitted it to Plaintiffs for signing. (Mitchell Aff., Ex. I.) Plaintiffs refused to sign the protective order. On January 24, 2002, Plaintiffs wrote to Defendant, stating, "[t]he terms of the Protective Order are not satisfactory as I advised you over a month ago. We will not agree to any Protective Order or any interpretation of an ambiguously worded Protective Order that precludes us from sharing documents with other OrthAlliance members who are also litigating or in the process of litigating against OrthAlliance." (Mitchell Aff., Ex. K.)

**B. Discussion.**

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good

> faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (7) that a trade secret of other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.

Fed. R. Civ. P. 26(c)(7).

Defendant states that the Court should enter the protective order the parties negotiated in December 2001. It argues that "it would be unfair to allow plaintiffs to change the agreement after the parties negotiated the deal, and the plaintiffs agreed to it." Further, because Plaintiffs initially requested a protective order allowing them to share information with other plaintiffs, but after Defendant refused, they agreed to a protective order without that provision, Defendant contends that Plaintiffs have not demonstrated good cause to modify the protective order now.

Defendant further asserts that it has already produced documents in reliance on the parties' informal agreement that information would not be shared with other plaintiffs. Defendant cites Omega Homes v. Citicorp Acceptance Co., 656 F.Supp. 393 (W.D. Va. 1987), as an example in which a court refused to modify a previously agreed to protective order, to subsequently allow for sharing information with other plaintiffs.

Defendant also argues that sharing information will not benefit other plaintiffs. It explains,

> Because each state's laws concerning the practice of dentistry are different, plaintiff's claims challenging the legality of their contract with OrthAlliance have no bearing on or relation to challenges that have been made to other contracts in other states. Similarly, the performance or alleged lack of performance of contracts OrthAlliance has with other members have no bearing on

> OrthAlliance's performance of its contracts with Dr. Hipple. Because these questions are particular to each practice, plaintiffs' arguments regarding sharing are misplaced.

Moreover, Defendant explains that the parties' Consulting and Business Services Agreement prevents Plaintiff from disclosing Defendant's trade secrets even to other OrthAlliance members. Finally, Defendant notes that the proposed protective order allows either party to seek additional relief from the court including, "permission to disclose Confidential documents to any person who might not otherwise be permitted to receive such documents under the provisions of this order." Therefore, Defendant concludes, "there is no justification for plaintiffs' continued refusal to execute the protective order they negotiated and agreed to."

Plaintiffs respond that the appropriate protective order in the present case would protect both parties from disclosure of their confidential information to the public, including competitors, but permit the sharing of discovery information with other member orthodontists, particularly those involved in similar lawsuits against OrthAlliance. Plaintiffs argue that Defendant has no legitimate grounds to prevent different plaintiffs from sharing this information with other similarly situated plaintiffs bringing similar claims. Plaintiffs state that in cases such as Wilk v. American Medical Assoc., 635 F.2d 1295 (7th Cir. 1980), courts have consistently allowed plaintiffs in different lawsuits to share discovery information when litigating identical issues. Plaintiffs explain that courts have recognized that it is more efficient to allow sharing of discovery information, to avoid duplicative discovery efforts. Plaintiffs explain that they and other similarly situated member orthodontists are litigating almost identical issues, by suing OrthAlliance for failure to provide services under extremely similar services agreements. Therefore, the Court should permit them to share relevant information.

The Court grants Plaintiffs' motion and denies Defendant's motion. The reasoning in Wilk is also compelling in the present case:

> As a general proposition, pre- trial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings. This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we, like the Multidistrict Panel, are impressed with the wastefulness of requiring the State of New York to duplicate discovery already made. See also Manual for Complex Litigation P 3.11 (1978). Rule 1 of the Federal Rules requires the Rules to be construed "to secure the just, speedy, and inexpensive determination of every action". We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

Wilk, 635 F.2d at 1299 citing American Telephone and Telegraph Co. v. Grady, 594 F.2d 594 (7th Cir.), cert. denied, 440 U.S. 971 (1979). In the present case, there is not even a protective order yet in place. Therefore, Wilk's argument in favor of sharing information amongst plaintiffs is even stronger. For the same reason, Omega Homes is distinguishable from the present case. In Omega Homes, the court had entered a stipulated protective order that was submitted with the approval of both parties. 656 F.Supp. at 396. Hence, the court explained, "[t]hroughout discovery CAC relied on that mutual understanding that the information it was disclosing was to be used solely for preparing this case." Id. at 404. This reliance was significant enough that the court reached its conclusion, even though the initial protective order allowed for later

modification. In the present case, Plaintiffs never signed the protective order, and while they initially stated the agreement was acceptable, once they recognized that it did not permit the sharing of information with other plaintiffs, they restated their objection and refused to sign it. Thus, Defendant's claim of reliance in not reasonable.

Further, an appropriate protective order will not tangibly prejudice substantial rights of Defendant. The present protective order only permits sharing information with other plaintiffs who subject themselves to the protective order, and submit themselves to the jurisdiction of the Court. Therefore, the Court will be able to retain control over the other plaintiffs and prevent Defendant's confidential information from being disclosed to non-member orthodontists. With respect to plaintiffs who are member orthodontists, they have all had access to any confidential information concerning Defendant's services through their membership in Defendant. Therefore, there will be no prejudice to Defendant if they share information with one another.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Defendant's Motion for Agreed-Upon Protective Order (Doc. No. 35) is **DENIED**;

(2) Plaintiffs' Motion for a Limited Protective Order (Doc. No. 38) is **GRANTED**.

Dated: April 8, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge